758 A.2d 1057

John SERRA

v.

MARYLAND DEPARTMENT OF the ENVIRONMENT.

No. 1519, Sept. Term, 1999.

Court of Special Appeals of Maryland.

Sept. 5, 2000.

644

Jonathan A. Hodgson (Hyatt, Peters & Weber, P.A., on the brief), Annapolis, for appellant.

Adam D. Snyder, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before HOLLANDER, SALMON and KRAUSER, JJ.

SALMON, Judge.

Appellant, John Serra, challenges the authority of appellee, the Maryland Department of the Environment ("the MDE"), to regulate the construction of boathouses over State tidal wetlands.

In 1998, Serra applied to the MDE for a wetlands license to construct a boathouse to be attached to an existing pier. After the MDE denied the wetlands application, Serra appealed the denial. The Circuit Court for Anne Arundel County upheld the MDE's decision. Serra then filed this timely appeal and raises two issues:

1.  Does the Maryland Department of the Environment have the authority to regulate an activity that is neither the dredging nor filling of state waterways?

2.  Did the circuit court commit error when it found that a structure designed to provide a cover for a boat while it is berthed on a pier is a "non-water dependent structure" and therefore prohibited by section 16–104 of the Environment article of the Annotated Code of Maryland?

We answer the first question in the affirmative and affirm the decision of the MDE to deny Serra's wetlands license. We also answer the second question in the affirmative; however, that answer does not affect the outcome of the case.

## PART I

## BACKGROUND

Serra is the owner of the property located at 2019 Poplar Ridge Road, Pasadena, Maryland. The property is bounded

on the south side by Main Creek, a tidal, navigable waterway of the State of Maryland. On March 22, 1995, Serra's predecessor in title obtained a permit to construct a pier that extends one hundred feet into the waters of Main Creek.

In 1998, after the pier was constructed, Serra applied to the MDE for a tidal wetlands license to build a 33' by 12' covered slip over the open water. The proposed structure was to be attached to the existing pier. The structure was to be composed of galvanized metal piping and removable cloth covering. Serra's purpose for building the covered structure was to protect his boat from the elements while moored.

The MDE found that the structure was a "boathouse" as that term is defined by section 26.24.01.02B(2) of the Code of Maryland Regulations (COMAR). That section provides: " 'Boathouse' means a structure with a roof or cover, or similar device placed over open water to protect a boat or other vessel." COMAR section 26.24.04.02C(2) reads "[e]xcept at commercial marinas, a person may not construct a new boathouse in or over State or private wetlands." The MDE denied the license on the basis that it violated COMAR 26.24.04.02C(2). The trial judge affirmed the MDE's denial of the permit, albeit for a reason different from that advanced by the MDE. The court ruled that the MDE

> had the authority to regulate boathouses over State wetlands and that the boathouse is prohibited under § 16–104 of the Environment [a]rticle because it is a "non-water dependent structure" as that term has been interpreted by MDE.

## PART II

Section 16–102 of the Wetlands Act, Title 16 of the Environment Article of the Annotated Code of Maryland (1996 Repl. Vol.) ("the Act"), sets forth the public policy reasons for preserving Maryland's wetlands: [1]

---

1. All statutory references are to the Environment article unless otherwise designated.

(a) *Need for policy.*—In many areas of the State much of the wetlands have been lost or despoiled by unregulated dredging, dumping, filling, and like activities, and the remaining wetlands are in jeopardy of being lost or despoiled by these and other activities. The loss or despoliation:

(1) Will affect adversely, if not eliminate entirely, the value of the wetlands as a source of nutrient to finfish, crustacea, and shellfish of significant economic value;

(2) Will destroy the wetlands as a habitat for plants and animals of significant economic value and eliminate or substantially reduce marine commerce, recreation, and aesthetic enjoyment;

(3) In most cases, will affect the natural ability of tidal wetlands to reduce flood damage and affect adversely the public health and welfare; and

(4) Will reduce substantially the capacity of the wetlands to absorb silt and result in increased silting of channel and harbor areas to the detriment of free navigation.

(b) *Statement of policy.*—It is the public policy of the State, taking into account varying ecological, economic, developmental, recreational, and aesthetic values, to preserve the wetlands and prevent their despoliation and destruction.

The COMAR regulations that concern tidal wetlands are set forth in Title 26, Subtitle 24. The statutory authority for those COMAR regulations is contained in the Act (§§ 16–101 to 16–503). COMAR 26.24.01(B) reads:

These regulations combine in one subtitle the Department's processing of applications for licenses to conduct activities in or over State tidal wetlands and for permits to conduct activities on private tidal wetlands. However, it is not the intent of these regulations to change the legal distinctions between State tidal wetlands and private tidal wetlands. *The State holds State tidal wetlands in a proprietary capacity, in trust for the benefit of the people of Maryland. The Department regulates the activities of private persons on private tidal wetlands.* When the Department acts on the application for a permit to conduct activi-

ties on private tidal wetlands, it is regulating the exercise of preexisting property rights. *In contrast, when the State acts on an application for a license to conduct activities in or over State tidal wetlands, it is deciding whether or not to grant to a person certain limited property rights that the person did not have previously, and, in making that decision, the State enjoys the same discretion that any owner has in deciding whether to grant to another an interest in the owner's property.*

(Emphasis added.)

Submerged aquatic vegetation is important to the health and vitality of the State's wetlands. Construction of boathouses concentrate storm water run-off and can cause persistent shading that impairs the growth of aquatic vegetation, and detracts from the ecological and aesthetic value of tidal wetlands. Because of the ecological problems caused by boathouses over State waters, COMAR section 26.24.04.02(C)(2) (restricting the construction of boathouses) was enacted on February 14, 1994.

In the case at hand, appellant does not dispute the correctness of MDE's determination that the structure he proposed to build met the definition of a boathouse set forth in COMAR section 26.24.01.02B(2). Appellant contends, however, the Act is the only source of the MDE's regulatory authority with respect to State wetlands and that, under the Act, the MDE may only regulate projects that involve dredging or filling activities. Thus, according to Serra, the MDE was without power to prohibit construction of his boathouse because it did not require dredging or filling to build. Appellant explains:

The proposed structure is built entirely on the existing pier, does not touch the water or the land beneath the water in any way. It involves neither dredging nor filling by the referenced statute. Therefore, as the desired boat cover involves neither dredging [nor] filling, the legislature has not established that a license is required for it. For this reason, the regulation on which the MDE has relied to deny

the [a]ppellant's application is without any authority and is void.

If appellant's argument is sound, then appellant should not have even applied for the wetlands license because the structure he intended to build unarguably did not involve dredging or filling.

The MDE's authority to regulate State wetlands is derived from the Board of Public Works ("the Board"). The relevant delegation of authority from the Board to the MDE is worded as follows:

> [T]he Board delegates to the [MDE] the authority to reject, authorize, modify, condition, or deny applications for construction or replacement of pilings, fixed or floating piers, decks, walkways, *boathouses*, and related structures on piers.

COMAR 23.02.04.04A (emphasis added).

Because COMAR section 26.24.04.02C(2) prohibits the construction of new boathouses except at commercial marinas, the question becomes whether the Board had authority to regulate the construction of a boathouse when the erection of the boathouse requires neither dredging nor filling.[2]

---

2. Under section 16–101 of the Wetlands Act, dredging and filling are defined as follows:

   (e) "Dredging" means the removal or displacement by any means of soil, sand, gravel, shells, or other material, whether or not of intrinsic value, from any State or private wetlands.

   (f) (1) "Filling" means:

   (i) The displacement of navigable water by the depositing into State or private wetlands of soil, sand, gravel, shells, or other materials; or

   (ii) The artificial alteration of navigable water levels by any physical structure, drainage ditch, or otherwise.

   (2) "Filling" includes storm drain projects which flow directly into tidal waters of the State;

   (3) "Filling" does not include:

   (i) Drainage of agriculture land;

   (ii) in-place replacement or repair of shore erosion control structures using substantially similar materials and construction design; or

   (iii) planting of wetlands vegetation when no grading or fill in State or private wetlands is necessary.

In order to ameliorate problems caused by dredging or filling on State wetlands, the Act states broadly that "[a] person may not dredge or fill ... without a license." Md. Code Ann., Envir. § 16–202(a). This is the extent of the Act's grant of power to the Board.

■■■ We agree with appellant that, under the Wetlands Act, the Board only has authority over activities that involve dredging or filling on State wetlands. *See Pier One, Inc. v. Department of Natural Resources,* 100 Md.App. 396., 407–08, 641 A.2d 955 (1994) (discussing similar statutory language as applied to private wetlands). This does not mean, however, that the MDE has no power to determine whether appellant can build his boathouse and attach it to a pier, erected over State tidal wetlands, the construction of which did involve dredging.

Serra admits that the building of the original pier involved dredging and that a license was needed to build the original pier. He also admits that, if he had originally submitted plans to build a pier with a boathouse attached, the MDE would have had authority to prohibit it. Appellant's position was made clear in the following colloquy between his counsel and the trial judge:

APPELLANT'S ATTORNEY: [O]ur contention is today that this application, as it is brought before the MDE and this Court on appeal, is neither dredging nor filling, notwithstanding the fact that it is upon a structure that when it came before the State was certainly dredging and filling.

THE COURT: So then this would be a hybrid that would encourage anybody who has either knowledge or a smart attorney to try and get a pier and then put up whatever they want to put up on top of the pier on subsequent occasion because they might run into a problem if they asked for all, the whole package at the same time.

Because all, the whole package would be subject, but if you break it down into pieces, then the only thing would be a pier itself. Because that is the only dredging/filling part,

and thus the only thing then that would be subject to regulation by the Department.

APPELLANT'S ATTORNEY: That question, Your Honor, I believe gets into issues of policy. My argument is regarding what the law allows and what the law states. Whether or not the MDE should have regulation addressing this situation is a matter for them to decide or for the legislature to decide for it.

I am not here to argue whether or not it is wise or prudent public policy to have a situation which would allow this. I am here simply arguing my client's case based on the law as it is written and what his application proposed. As I said a moment ago, simply stated, it is that it is neither dredging nor filling. Whether or not the MDE should address that is something for them to take up among themselves.

What appellant's counsel suggests is that the law as written allows "piecemeal" construction—in any way the pier owner desires—once he or she obtains a license. The law, however, is not nearly as liberal as appellant supposes.

Section 16–202(c) of the Act provides, in pertinent part:

(c) *Hearing; issuance; conditions; public notice; provision for periodic maintenance dredging.*—(1) Upon receipt of a report by the Secretary, the Board shall decide if issuance of the license is in the best interest of the State, taking into account the varying ecological, economic, developmental, recreational, and aesthetic values each application presents. *If the Board decides to issue the license, the issuance of the license shall be for consideration and on terms and conditions the Board determines.* Every license shall be in writing.

(Emphasis added.) Therefore, the Board, and by delegation the MDE, was given the right to impose conditions when it issues a license to build a pier.

■    In the license issued to Serra's predecessor, one of the "General Conditions" reads:

5. DNR [3] [Department of Natural Resources] reserves the right to determine whether or not a particular structure(s) qualifies for this authorization.

Another condition of the license issued to Serra's predecessor was imposed by law and is set forth in COMAR 26.24.02.07A, which reads, in pertinent part:

**License or Permit Modifications or Extensions.**

A. Requests for License or Permit Modifications.

(1) Upon written request for a license or permit modification, the Department shall determine if the modification is major or minor.

(2) Minor modifications to a license may be recommended to the Board or made to a permit by the Department if the modification involves:

(a) A change in land ownership;

(b) A reduction in the scope of the originally authorized work;

(c) Revisions to the project plans or specifications that would otherwise be approved; or

(d) Structures, activities, or the conditions of a license or permit which require modification to correct adverse environmental impacts.

(3) *Major modifications to a license or permit require a new application as described in Regulation .02 of this chapter.*

(Emphasis added.) Construction of a 33' × 12' covered slip and attaching it to the existing pier as proposed by appellant is obviously a "major modification" within the meaning of COMAR 26.24.02.07A.

As can be seen by the above, attempts to circumvent the Act by piecemeal construction were anticipated by the legisla-

---

**3.** Effective July 1, 1995, administration of the tidal wetlands program, along with the nontidal wetlands and waterway construction programs, was transferred from the Department of Natural Resources to the Department of the Environment. *See* Ch. 488,. § 3; Md. Code Ann., Envir. § 16–101(d) (defining "Department" as MDE).

ture, by the DNR when it issued the permit to Serra's predecessor in title, and by the drafters of the COMAR regulations. The MDE does have the authority to determine whether appellant can build a new boathouse over State wetlands and attach it to an existing pier. And, having that authority, the MDE properly recognized that COMAR 26.24.02.02A prohibited it from issuing a new license allowing the construction of the boathouse.

## PART III

■ The trial judge concluded that the General Assembly had granted the MDE the right to prohibit boathouses by virtue of section 16–104(b), which, with exceptions not here relevant, prohibits the Board of Public Works from issuing a license for a project "involving the construction of a dwelling unit or other non-water dependent structure on a pier located on State wetlands." The trial court held that the proposed boathouse was a "non-water dependent structure." For reasons explained in appellant's brief, the trial judge erred in this regard. While we agree with the appellant that the structure that he proposed to build over open water was indeed "water dependent," this avails appellant nothing because the authority to deny the permit for the boathouse was contained elsewhere—as explained in Part I, *supra.*

## CONCLUSION

■ The MDE had authority to prohibit the building of a boathouse attached to a pier for which a license had already been issued. When the MDE denied the new permit, it was right for the right reason.[4]

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

---

4. Our role in reviewing the decision of an administrative agency is the same as that of the circuit court. *Department of Health and Mental Hygiene v. Shrieves,* 100 Md.App. 283, 303–04, 641 A.2d 899 (1994). Thus, we can affirm the decision of the agency for a reason different from the one(s) advanced by the trial court.